**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Michael Gould; and Lisa Funk,<br><br>    Plaintiffs,<br><br>vs.<br><br>M&I Marshall & Ilsley Bank, a national banking association,<br><br>    Defendant. | No. CV11-1299-PHX-DGC<br><br>**ORDER** |

Defendant BMO Harris Bank, N.A. ("BMO"), successor by merger to M&I Bank, moves to dismiss Plaintiffs Michael Gould and Lisa Funk's complaint for failure to state a claim pursuant to Rule 12(b)(6). Doc. 13. Plaintiffs have responded, and Defendant has replied. Docs. 17, 21. The motion is fully briefed. For the reasons stated below, the Court will grant the motion.[1]

**I.  Background.**

This action was originally commenced in the Superior Court for Maricopa County. Doc. 1 ¶ 1. Defendant removed the case to this Court on the basis of diversity jurisdiction. Doc. 1 ¶ 2. The complaint alleges the following facts, which are assumed true for purposes of the motion.

---

[1] Plaintiffs' request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Sometime in 2007, Defendant agreed to extend a loan for Plaintiffs to purchase an interest in a condominium located in Mexico. Doc. 10 ¶ 9. In July of 2007 and as a part of the loan process, Defendant ordered an appraisal of the condominium. Doc. 10 ¶ 10. Defendant told Plaintiffs that the appraisal had been done according to accepted industry standards that govern appraisals and that the condominium's valuation in the appraisal was accurate. *Id.* Before entering into the loan agreement, Plaintiffs requested a copy of the appraisal for their inspection. Doc. 10 ¶ 23. Defendant told Plaintiffs that its internal policies did not allow customers to receive copies of appraisals. Doc. 10 ¶¶ 24–25.

After entering into the agreement and purchasing the condominium, Plaintiffs were able to obtain a copy of the appraisal on April 27, 2011. Doc. 10 ¶ 26. Defendant misrepresented its policy when it said that Plaintiffs were not allowed to receive a copy of the appraisal. Doc. 10 ¶ 29.

Despite Defendant's contrary assertions, the appraisal fell well short of industry standards and the value was not accurate. Doc. 10 ¶¶ 11–22. Generally, Plaintiffs claim that the appraisal was severely deficient in its assessment of the comparable sales it used to value the condominium. *Id.*

The complaint alleges that Defendant deliberately misled Plaintiffs with the intent to defraud them. Doc. 10 ¶ 30. Plaintiffs would not have purchased an interest in the condominium if Defendant had provided the appraisal or if Defendant had informed them that the appraisal was not done according to industry standards. Doc. 10 ¶¶ 35-38.

The complaint asserts seven counts: (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) fraud in the inducement; (4) negligence per se under Arizona's Residential Mortgage Fraud statute, ARS § 13-2320; (5) common law fraud; (6) consumer fraud; and (7) negligent misrepresentation.

**II.  Legal Standard.**

When analyzing a complaint for failure to state a claim under Rule 12(b)(6), the well-pleaded factual allegations "'are taken as true and construed in the light most

favorable to the nonmoving party.'" *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009) (citation omitted). Legal conclusions couched as factual allegations "are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009), and therefore "'are insufficient to defeat a motion to dismiss for failure to state a claim,'" *In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (citation omitted). To avoid a Rule 12(b)(6) dismissal, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 1950 (quoting Fed. R. Civ. P. 8(a)(2)).

"In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not look* beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss . . . . The focus of any Rule 12(b)(6) dismissal . . . is the complaint." *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (emphasis in original) (internal citations omitted).

**III. Analysis.**

    **A. Count One – Breach of Contract.**

The contract between the parties in this case was Defendant's agreement to loan money to Plaintiffs. A proper complaint for breach of contract includes allegations of "an agreement, the right to seek relief, and breach by the defendant." *Commercial Cornice & Millwork, Inc. v. Camel Constr. Servs. Corp.*, 739 P.2d 1351, 1355 (Ariz. Ct. App. 1987). Here, both parties agree that Defendant did not violate any express term in the loan agreement. Doc. 17, at 3; Doc. 20, at 4. Instead, Plaintiffs' claim that Defendant breached an implied term of the contract: the covenant of good faith and fair dealing.

Doc. 17, at 3. Because Plaintiffs have not alleged a violation of a term contained within the loan agreement, the Court will dismiss the breach of contract claim.

### B. Count Two—Breach of the Covenant of Good Faith and Fair Dealing.

Plaintiffs argue that this count survives dismissal as a violation sounding in contract and in tort. Doc. 17 at 2–6. Plaintiffs have not sufficiently pleaded either.

#### 1. Bad Faith Sounding in Contract.

Arizona law implies a covenant of good faith and fair dealing in all contracts. *Rawlings v. Apodaca*, 726 P.2d 565, 569 (Ariz. 1986) (citations omitted). The contractual relationship gives rise to the duty, and the duty's essence "is that neither party will act to impair the right of the other to receive the benefits which flow from their . . . contractual relationship." *Id.* (citations omitted). There are generally two ways a party can violate the covenant of good faith: either (1) "by exercising express discretion in a way inconsistent with a party's reasonable expectations," or (2) "by acting in ways not expressly excluded by the contract's terms but which nevertheless bear adversely on the party's reasonably expected benefits of the bargain." *Bike Fashion Corp. v. Kramer*, 46 P.3d 431, 435 (Ariz. Ct. App. 2002) (citing *Wells Fargo Bank v. Ariz. Laborers, Teamsters & Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12, 28 (Ariz. 2002)). "'Acts in accord with the terms of one's contract cannot *without more* be equated with bad faith.'" *Wells Fargo Bank*, 38 P.3d at 30. (quoting *Balfour, Guthrie & Co. v. Gourmet Farms*, 166 Cal. Rptr. 422, 427–28 (1980)).

Plaintiffs have not alleged that Defendant exercised any contractually reserved discretion inconsistent with their reasonable expectations. Thus, in order to survive dismissal, Plaintiffs must allege that Defendant acted in a way not excluded by the contract, but still adversely affected their reasonably expected benefits.

Plaintiffs rely on *Southwest Sav. and Loan Ass'n v. SunAmp Sys., Inc.*, 838 P.2d 1314 (Ariz. Ct. App. 1992), to support their argument that Defendant's misrepresentation about the accuracy of the appraisal gives rise to a breach of the covenant. In *SunAmp*,

plaintiff Southwest Savings and Loan Association extended a line of credit to defendant SunAmp Systems. *Id.* at 1315. During the meeting in which Southwest agreed to extend a line of credit, Southwest's Vice President stated that a specific investor's guarantee would be an "essential" requirement for the line of credit. *Id.* The guarantee was later found to be invalid, and Southwest, acting pursuant to an express term in the contract, froze SunAmp's line of credit. *Id.* at 1316. SunAmp later filed for bankruptcy, and Southwest brought suit against SunAmp and its guarantors seeking repayment of the line of credit. *Id.* at 1318. SunAmp counterclaimed, alleging that Southwest breached the implied covenant of good faith and fair dealing by freezing the credit line. *Id.* The court held that Southwest did not violate the covenant of good faith and fair dealing by freezing SunAmp's line of credit. *Id.* at 1321–22. The court stated that SunAmp was not justified in expecting a lender to act any differently than Southwest acted. *Id.*

Plaintiffs argue that, like SunAmp, which assured Southwest of a guarantor for the line of credit, Defendant here assured Plaintiffs that an accurate appraisal was conducted as part of the loan process. But *SunAmp* held that Southwest did not violate the covenant of good faith and fair dealing when it froze the line of credit, not that SunAmp violated the covenant when it failed to provide a guarantor. The case does not support Plaintiff's position.

Plaintiffs have not shown how Defendant's actions prevented or adversely affected the reasonably expected benefit flowing from the agreement – a loan to Plaintiffs. The agreement was for Defendant to provide a loan for Plaintiffs' condominium purchase in exchange for Plaintiffs' promise to repay the loan with interest. Under the agreement, Plaintiffs reasonably could expect the loan proceeds to be available on the agreed date, and that Defendant would adjust the interest rate in good faith and in accordance with the loan agreement. Plaintiffs do not allege that the contract required Defendant to appraise the property or to ensure that Plaintiffs' view of the value of the property was accurate. Plaintiffs have not pointed to any reasonably expected benefit from the agreement that

Defendant's actions adversely affected.

Plaintiffs claim they were denied the "benefit of the obligation to play fairly." Doc. 17 at 5. But this is just a restatement Plaintiffs' conclusion: that Defendant violated the covenant of good faith and fair dealing. Plaintiffs have not pointed to, and the Court cannot find, what reasonably expected benefit Defendant interfered with in its alleged actions. Thus, the Court must dismiss the claim of bad faith sounding in contract.

### 2. Bad Faith Sounding in Tort.

Although Arizona is among those jurisdictions that allows a tort cause of action for acting in bad faith, *Noble v. Nat'l Am. Life Ins. Co.*, 624 P.2d 866, 867 (Ariz. 1981), the tort arises only in limited situations, *see, e.g.*, *Rawlings*, 726 P.2d at 574–75. The Arizona Supreme Court has stated that "a tort action for breach of the implied covenant is more often recognized where the contract creates a relationship in which the law implies special duties not imposed on other contractual relationships." *Id.* The clearest example is insurance. *See Noble*, 624 P.2d at 867. When people buy insurance, they are not looking merely for commercial advantage; they are buying "protection against calamity." *Id.* The insurer assumes a special relationship—to act when problems arise and to protect the insured from calamity. Other examples include the common-carrier/passenger relationship, the innkeeper/guest relationship, the physician/patient relationship, and the attorney/client relationship. *Rawlings*, 726 P.2d at 574–75.

Arizona has rejected the tort of bad faith in other contexts. Arizona courts have refused to extend the tort to sellers and buyers of a home, *Oldenburger v. Del E. Webb Dev. Co.*, 765 P.2d 531, 535 (Ariz. Ct. App. 1988), and to escrow agents, *Burkons v. Ticor Title Ins. Co. of Cal.*, 813 P.2d 710, 720–21 (Ariz. 1991). Arizona courts have not extended a bad faith tort to the borrower/lender relationship, and the Court will not take that step here. A borrower who seeks financing from a lender contracts for a commercial benefit, not for security akin to that found in insurance contract or the other relationships where Arizona has applied the tort. *See Dodge v. Fid. and Deposit Co. of Md.*, 778 P.2d

1240, 1242 (Ariz. 1989) (tort action applicable where the plaintiff "contracted for security or protection rather than for profit or commercial advantage").

Plaintiffs rely heavily on factual similarities between their situation and the plaintiffs in *Rawlings*, who were allowed to proceed on a bad faith cause of action. Plaintiffs' reliance is misplaced. The claim in *Rawlings* was brought by an insured against an insurance company. *Rawlings* 726 P.2d at 574–76; *see GRK Holdings, LLC v. First American Title Ins. Co.*, 2010 WL 3940575 at *5 (D. Ariz. Oct. 6, 2010). Plaintiffs have a loan agreement with Defendant, not an insurance policy with an insurer.

### C. Counts Three, Four, Five, Six and Seven—Fraud Based Claims.

Rule 9(b) requires a party alleging fraud to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). The complaint "must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986) (citations omitted). A complaint of fraud must specify "the who, what, when, where, and how" of the alleged misconduct. *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Plaintiffs allege fraud of five varieties: fraud in the inducement, negligence *per se* under Arizona's Residential Mortgage Fraud statute, common law fraud, consumer fraud, and negligent misrepresentation. Each of these claims must be pled with particularity.[2] Plaintiffs argue that paragraphs 10, 12–23, and 26 of their complaint contain the facts that satisfy the specificity requirements of Rule 9(b). Doc. 17 at 13. In paragraph 10,

---

[2] Plaintiffs' allegation of negligence *per se* rests on their belief that Defendant has violated Arizona's Residential Mortgage Fraud statute. Plaintiffs' claim is still an "averment of fraud" which is subject to Rule 9(b). *See, e.g.*, *Grismore v. Capital One F.S.B.*, No. CV 05–2460–PHX–SMM, 2007 WL 841513 at *6 (D. Ariz. Mar. 16, 2007) (applying Rule 9(b)'s particularity requirement to the Arizona Consumer Fraud Act). Negligent misrepresentation must also meet the particularity standards of 9(b). *See*, *Sweeney v. Darricarrere*, No. 2:09-cv-00266 JWS, 2009 WL 2132696, at *12 n.109 (D. Ariz. July 14, 2009) ("'It is well established in the Ninth Circuit that both claims for fraud and negligent misrepresentation must meet Rule 9(b)'s particularity requirements.'") (quoting *Neilson v. Union Bank of Cal., N.A.*, 290 F.Supp.2d 1101, 1141 (C.D. Cal. 2003).

Plaintiffs allege that "the Bank made express representations" that an appraisal was ordered, that it was accurate, and that it was executed according to industry standards. Doc. 10. Paragraphs 12-23 contain Plaintiffs allegations of what specifically was wrong with the appraisal. *Id.* Paragraph 26 states that Plaintiffs did not receive the appraisal until April 27, 2011.

The complaint does not allege who at M&I made the fraudulent representations. *See Beshears v. Provident Life and Accident Ins. Co.*, No. CV-07-00292-PHX-DGC, 2007 WL 1438738, at *1–2 (D. Ariz. May 15, 2007) (holding complaint insufficient because plaintiffs did "not allege which employee or type of employee made fraudulent statements"). The complaint provides only an approximate month in 2007 when the representation was made, and there is no mention of where the fraud occurred. Plaintiffs fraud based claims fail to satisfy Rule 9(b)'s requirement of particularity.[3]

**IT IS ORDERED:**

1. The motion to dismiss the amended complaint (Doc. 13) is **granted.**

2. Plaintiffs may file an amended complaint with respect to the fraud counts by **November 30, 2011**. The Court concludes that the breach of contract and bad faith claims cannot be cured by amendment, and leave to amend them therefore is denied. This is the last opportunity the Court will afford Plaintiffs to amend the complaint.

3. All terms of the Case Management Order (Doc. 23) remain in effect.

Dated this 18th day of November, 2011.

_____
David G. Campbell
United States District Judge

---

[3] Because the fraud counts do not satisfy Rule 9(b)'s particularity requirements, the Court need not reach the parties' arguments regarding whether Arizona's Residential Mortgage Fraud statute allows for a private cause of action, or the statute of limitations arguments.

- 8 -